IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

ADRIAN CERVANTES, *Petitioner*,

*v.*

STATE OF ARIZONA, *Respondent*.

No. 1 CA-SA 25-0062

FILED 05-15-2026

---

Petition for Special Action from the Superior Court in Maricopa County
No.  CR2024-117369-001
The Honorable Travis C. Marderosian, Judge *Pro Tempore*

**JURISDICTION ACCEPTED; RELIEF DENIED**

---

COUNSEL

Maricopa County Public Defender's Office, Phoenix
By Catherine R. Bradshaw
*Counsel for Petitioner*

Maricopa County Attorney's Office, Phoenix
By Quinton S. Gregory, Heather Coe-Smith (argued)
*Counsel for Respondent*

---

**OPINION**

Judge Samuel A. Thumma issued the opinion of the Court, in which Chief Judge Randall M. Howe joined. Chief Judge Randall M. Howe specially concurred. Judge Andrew M. Jacobs dissented.

---

**T H U M M A**, Judge:

**¶1** Petitioner Adrian Cervantes seeks special action review of an order requiring him to translate, from Spanish to English, previously disclosed records, notes and test data of his privately retained competency expert Dr. Julio Ramirez. After this court declined special action jurisdiction, the Arizona Supreme Court granted review and directed this court to accept special action jurisdiction. Accepting special action jurisdiction, because Cervantes has shown no error, this court denies relief.

## FACTS AND PROCEDURAL HISTORY

**¶2** Petitioner is facing three felony charges (two counts of aggravated assault of a police officer and one count of possession of methamphetamine) and three misdemeanor charges (reckless burning, disorderly conduct and trespass). The alleged offenses occurred in June 2023 and April 2024. In April 2024, Cervantes was taken into custody on the felony charges and he apparently has been in custody ever since.

**¶3** The public defender was appointed to represent Cervantes. At defense counsel's request, the court ordered an examination of Cervantes' competency to stand trial. *See* Ariz. R. Crim. P. 11 (2026).[1] By late May 2024, after two doctors evaluated Cervantes, the court found him not competent and ordered that he participate in restoration treatment provided by Dr. Jason Frizzell. Dr. Frizzell provided restoration treatment and, in late July 2024, submitted a final competency report. At an August 1, 2024 hearing, the court set an October 2024 competency hearing. That evidentiary hearing has been continued several times. Now, more than a year and a half later, that competency hearing has not been held and has not been set. Instead, Cervantes is being held in jail, where he apparently is not receiving services.

**¶4** On August 1, 2024, the court ordered Dr. Frizzel to disclose to Cervantes' counsel "copies of all records, notes and test data," including "CD/DVD's, a list of the test(s) administered, raw and scaled scores, client/patient responses to test questions or stimuli, and notes/recordings concerning client/patient statements and behavior during examination," (referred to here as "Records") pertaining to restoration treatment. The court also required Cervantes' counsel to then provide redacted copies of those documents to the State's counsel.

---

[1] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

¶5          The court not only required Cervantes to disclose the name of any expert witness he would call to testify at the evidentiary hearing, but also to disclose to the State all Records pertaining to that expert's evaluation of him. Cervantes, who primarily speaks Spanish, privately retained Dr. Julio Ramirez as his expert. A significant, complicating fact here is that Dr. Ramirez, who also speaks Spanish, evaluated Cervantes in Spanish.

¶6          After further hearings and motion practice, in January 2025, Cervantes disclosed to the State all of Dr. Ramirez' Records, as the court had ordered. The volume of that disclosure is unknown from the record provided. The State, however, has indicated that it includes "raw data and at least 6 audio recordings."

¶7          The issue resulting in this special action arose because Dr. Ramirez' Records that Cervantes disclosed to the State in January 2025 are in Spanish, not in English. After reviewing that disclosure, the State asked whether Cervantes was "going to be providing translations." Cervantes' counsel responded, "[w]e disclosed the raw data and recordings in compliance with the Court's order." Although more than a year has passed, that standoff has not changed and is the sole focus of this special action.

¶8          Dissatisfied with Cervantes' refusal to translate the disclosure, the State moved to preclude Dr. Ramirez as an expert witness. The State argued preclusion was proper because "[s]imply forwarding test material written in Spanish and recordings of interviews conducted in Spanish" did not satisfy the court's orders "or the intent of" Arizona Rule of Criminal Procedure 11.4(b). "Based on both the failure to comply with discovery orders in this case and unwillingness to mediate the situation," the State moved to preclude the testimony of Dr. Ramirez at the competency hearing.

¶9          Cervantes responded that the disclosure of Dr. Ramirez' Records in Spanish "satisfies the requirements of Rule 11.4(b)" as well as the superior court's order, adding that "any translation of such material would be an *interpretation* of the data and audio recordings, and thus would not satisfy the requirements of the rule." Cervantes argued "no legal authority" supported the State's view that translation from Spanish to English was required. Cervantes stated, albeit without record support, that "the [S]tate routinely discloses information, reports, and interviews pursuant to Rule 15 in other languages. In those circumstances, the defense bears the burden of translating those materials."

**¶10** In February 2025, after oral argument, the superior court ordered Cervantes to translate Dr. Ramirez' Records that previously had been disclosed from Spanish to English, to provide "disclosure in which they can read . . . [and] then use to prepare for an evidentiary hearing." The court continued the competency hearing, stating it "would prefer" to allow time for that translation "so that we can hear from Dr. [Ramirez] as opposed to precluding him" as a witness. "Based on the Court's inclination to grant the State's motion," the parties agreed to continue the competency hearing.

**¶11** In March 2025, Cervantes timely filed this special action, asking this court to accept special action jurisdiction and grant relief by vacating the order requiring translation of Dr. Ramirez' Records from Spanish to English. After full briefing, in June 2025, this court unanimously declined special action jurisdiction. Cervantes petitioned the Arizona Supreme Court for review, and in November 2025, that Court granted review, vacated this court's order declining special action jurisdiction and remanded for this court "to consider the merits of the special action."

**¶12** Given the law of this case stated by the Arizona Supreme Court, this court accepts special action jurisdiction. Having further considered the positions of the parties, and with the benefit of oral argument in February 2025, this court denies relief.

## DISCUSSION

**¶13** This court reviews the interpretation of court rules, including the scope of required disclosure, de novo. *State v. Roque*, 213 Ariz. 193, 205 ¶ 21 (2006). "A trial court has broad discretion over discovery matters, and [this Court] will not disturb its rulings on those matters absent an abuse of that discretion." *State v. Fields*, 196 Ariz. 580, 582 ¶ 4 (App. 1999). This court may affirm if the superior court was correct for any reason, "even if that reason was not considered by the trial court." *Kellin v. Lynch*, 247 Ariz. 393, 396 ¶ 12 (App. 2019) (citation omitted); *accord State v. Boteo-Flores,* 230 Ariz. 551, 553 ¶ 7 (App. 2012) ("We are required to affirm a trial court's ruling if legally correct for any reason") (citation omitted); *Glaze v. Marcus*, 151 Ariz. 538, 540 (App. 1986) (same) (citing *Cross v. Cross*, 94 Ariz. 28, 31 (1963)); *State v. Perez*, 141 Ariz. 459, 464 (1984) ("The fact that the trial judge came to the proper conclusion for the wrong reason is irrelevant. We are obliged to affirm the trial court's ruling if the result was legally correct for any reason.") (citations omitted).

**¶14** The applicable rules regarding disclosure of competency experts differs depending upon whether the expert was court-appointed or

4

retained. *See* Ariz. R. Crim. P. 11.4(a) ("Reports of Appointed Experts"); 11.4(b) ("Reports of Other Experts"). Both Rule 11.4(a) and (b) contain self-effectuating disclosure obligations and, although Rule 11.4(b) applies here, a comparison of the two rules offers context.

**¶15** Rule 11.4(a), which does not apply here, requires (1) limited disclosure (requiring disclosure only of the court-appointed "expert's report"); (2) specifically addresses timing (requiring the report to be submitted to the court "no later than 10 business days after the expert's examination is completed") and (3) is quite protective of defendant's rights (providing defendant's statements about any charged or uncharged offense "may be made available only to the defendant" and not the State, with defendant having a right to edit the report before disclosure to the State). *See* Ariz. R. Crim. P. 11.4(a). By contrast, Rule 11.4(b), which does apply here (given that Cervantes privately retained Dr. Ramirez), requires disclosure of his report and other materials, at least 15 business days before any competency hearing, and gives Cervantes no right of redaction. *See* Ariz. R. Crim. P. 11.4(b). At least 15 business days before the competency hearing, Cervantes must disclose to the State:

> (1) the expert's name, address, and qualifications; (2) the results of any mental examinations, scientific tests, experiments, or comparisons conducted on the defendant or on any evidence in the case by or on the behalf of the mental health expert; and (3) any written report or statement in connection with the case or, if the expert will testify without preparing a written report, a summary of the general subject matter and opinions on which the expert is expected to testify.

Ariz. R. Crim. P. 11.4(b).

**¶16** The parties' briefs address whether the superior court had authority to require translation of Dr. Ramirez' Records from Spanish to English, albeit without great detail. Collectively, the petition and response do so in less than four pages. Although this court concludes the superior court had that authority under Arizona law, the analysis here starts with the parties' arguments, which do not appear to answer the question.

**¶17** Cervantes' special action petition argued that the superior court incorrectly applied Rule 11.4(b) in requiring him to make any

disclosure of Dr. Ramirez' Records. Cervantes admits, however, that the court ordered that disclosure in August 2024, more than a year and a half ago. Cervantes also admits that he disclosed the Notes to the State in January 2025, more than a year ago. Cervantes did not seek special action relief before complying with the disclosure requirement in January 2025. During oral argument before this court, Cervantes' counsel admitted that Cervantes had disclosed Dr. Ramirez' Records to the State before seeking special action relief. Cervantes' counsel also candidly conceded that Cervantes had met his disclosure obligation, and that no remedy is available to her regarding disclosure. Accordingly, under Arizona law, to the extent that Cervantes challenges his obligation to provide the January 2025 disclosure, his own actions have mooted any such challenge. *See Welch v. Cochise Cnty. Bd. of Supervisors*, 251 Ariz. 519, 523 ¶ 12 (2021) ("Arizona courts do 'exercise restraint to ensure they" resolve cases that are "ripe for decision and not moot.'") (citations omitted); *State v. Reed*, 248 Ariz. 72, 77 ¶ 17 (2020) ("Generally, this court will not examine waived or moot questions.") (quoting *In re Leon G.*, 204 Ariz. 15, 17 ¶ 2 n.1 (2002)).

**¶18** Cervantes argues the superior court did "not have authority to order the defense to translate" Dr. Ramirez' Records. Unlike Cervantes' prior disclosure of Dr. Ramirez' Records to the State, Cervantes has not complied with this translation order. Accordingly, that issue is not moot and, instead, is ripe for consideration. In challenging the translation obligation, Cervantes offers three arguments, none of which show error.

**¶19** Cervantes first states that "[t]he translation of supplemental disclosure materials is not mentioned in Rule 11." Quoting *Planned Parenthood Arizona, Inc. v. Mayes*, Cervantes then argues, with reference to Rule 11, that "'if the [statutory] language is clear, judicial construction is neither required nor proper.'" 257 Ariz. 137, 142 ¶ 15 (2024) (citations omitted). Cervantes, however, states that Rule 11 does not mention translation, a point that the State appears to concede. Thus, no language in Rule 11 addresses the issue or requires interpretation in resolving the issue. *See Mayes*, 257 Ariz. at 142 ¶ 15 ("Under this plain meaning analysis, '[w]e look first to the language of the provision, for if the [statutory] language is clear, judicial construction is neither required nor proper.'") (citations omitted). Accordingly, and accepting Cervantes' argument that Rule 11 is silent on the point, *Mayes* provides no answer.

**¶20** Quoting *State v. Gonzales*, Cervantes next argues that "'[w]hen the legislature has specifically included a term in some places within a statute and excluded it in other places, courts will not read that term into the sections from which it was excluded.'" 206 Ariz. 469, 471 ¶ 11 (App.

2003) (citations omitted). *Gonzales*, however, adds that "[d]espite the foregoing, we must bear in mind that canons of statutory construction should never be applied 'when the general context of the statute and the public policy of the state contradict it.'" 206 Ariz. at 471 ¶ 12 (quoting *Forsythe v. Paschal*, 34 Ariz. 380, 383 (1928)). The Arizona Constitution declares that "[t]he official language of the state of Arizona is English[,]" Ariz. Const. art. 28 § 2, and "[o]fficial actions shall be conducted in English," *id.* § 4. Accordingly, as with *Mayes*, *Gonzales* provides no answer.

¶21     Cervantes' final argument is that "the Arizona Legislature has contemplated circumstances in which materials may not be in English." Cervantes cites to a Title 25 ("Marital and Domestic Relations") statute, requiring that records filed in a tribunal "must be in the original language and, if not in English, must be accompanied by an English translation." A.R.S. § 25-1343. Cervantes implies that, because Title 13 ("Criminal Code") does not contain an "English translation" provision, Arizona state courts cannot require that non-English documents in criminal proceedings—or, apparently, any non-family court proceeding—be translated into English. But that is not Arizona's law. *See State v. Cordova*, 109 Ariz. 439, 441 (1973) ("English is the language of the courts in Arizona."); *accord State v. Escalante-Orozco*, 241 Ariz. 254, 272 ¶ 38 (2017) (citing cases rejecting constitutional challenges to A.R.S. § 21-202(B)(3), which bars individuals "not currently capable of understanding the English language" from serving on a jury in Arizona's state courts).

¶22     None of Cervantes' arguments show that the superior court was precluded from requiring him to translate Dr. Ramirez' Records from Spanish to English. But failing to show the court was precluded from requiring translation is not the same as concluding the court had the authority to do so. In defending the translation order, the State offers several arguments why it should not have to translate those materials. None of those arguments, however, answer whether the superior court had the authority to require translation by Cervantes.

¶23     The State first argues that "it is not the State's burden to provide translation services." In pressing that argument, the State relies on two distinguishable authorities. Maricopa County Superior Court Local Rule 10.5(b) does, as the State asserts, require the court to provide interpretation and translation services when it receives a timely written request. But nothing indicates that such a request was made here or that Local Rule 10.5(b), or a request under it, resulted in the translation order. Second, the State accurately quotes *Calderon-Palomino v. Nichols* for the propositions that "the state . . . has an interest in avoiding unnecessary costs

and delays" and "'[t]he cost in time, money and administrative disruption' of providing 'foreign language services' are legitimate governmental interests." 201 Ariz. 419, 422 ¶ 6, 423 ¶ 11 (App. 2001). That is certainly true. In this case, both parties are represented by public lawyers paid by the State: Cervantes by the Maricopa County Public Defender and the State by the Maricopa County Attorney's Office. But the issue here is which party properly is responsible for furthering those legitimate interests and, more directly, whether the court had the authority to require Cervantes to translate the disclosed materials.[2]

¶24        The State next argues that it, as "the non-producing" party, should not have the burden to translate materials from Spanish to English and that "[t]o hold otherwise would impose a massive burden on the State." But neither Cervantes nor the State pressed an undue burden argument in superior court, which would be quite fact-intensive.

¶25        The State admits that "Rule 11 is silent on this matter," negating any thought that it provides the answer. The State then cites A.R.S. § 25-1343, the same family law statute Cervantes cites, for the proposition that "other areas of our law recognize that the producing party bears the burden to provide English-translated copies of any disclosures not originally in English." This, however, is not a family court case and that statute does not apply here.

¶26        Finally, the State argues that, because:

> Rule 11.4(b) requires that Cervantes disclose all materials related to Dr. Ramirez' evaluation only 15 days before the Rule 11 hearing, . . . it is virtually impossible in 15 business days for the State to translate all materials into English with enough time remaining to sufficiently analyze everything and be prepared to cross-examine and otherwise address Dr. Ramirez' evaluation and conclusions.

---

[2] Nor does Cervantes' argument that *Calderon-Palomino* found no constitutional violation where the State refused to provide a Spanish-speaking defendant with Spanish translations provide the answer. The question is not whether the translation order was constitutionally required but, rather, whether the superior court properly could require it.

The most direct way to resolve any timing issue would appear to be requiring disclosure even further before a Rule 11 hearing, not the proposition that Rule 11.4—which the State admits "is silent on this matter"—requires translation from Spanish to English.

¶27 Where, then, does that leave things in this court's journey to find an answer whether the superior court had authority to issue the translation order? If Rule 11 does not provide the answer, as the parties appear to agree, do other sources of law provide the answer? As noted above, "[t]he official language of the state of Arizona is English[,]" Ariz. Const. art. 28 § 2, and "[o]fficial actions shall be conducted in English," *id.* § 4. And in all judicial proceedings, including criminal matters, "English is the language of the courts in Arizona." *Cordova*, 109 Ariz. at 441. With these directives by the Arizona Constitution and the Arizona Supreme Court in mind, two other sources of law show that the superior court had the authority to issue the translation order.

¶28 First, the parties agreed in oral argument before this court that the Arizona Rules of Evidence will apply at the competency hearing. Under the Arizona Rules of Evidence, an expert has an obligation to disclose facts and data upon which he or she relies. *See* Ariz. R. Evid. 705. The court may order that disclosure to occur before the expert is allowed to testify to his or her opinion. *Id.* And the court "can exclude the expert's testimony, or portions of it, if the expert refuses to disclose the underlying data." Shirley J. Wahl, et al., *Arizona Practice Law of Evidence* § 705 at 445-46 (2008). Coupled with this authority, the Arizona Rules of Evidence direct the court to "exercise reasonable control over the mode and order of examining witnesses and presenting evidence" to, among other things, "avoid wasting time." Ariz. R. Evid. 611(a)(2). These evidence rules provide a superior court discretion to require advance disclosure, in a form usable at trial, of the underlying facts and data upon which an expert relies. The rules allow the court to take such action to prevent avoidable delay and disputes at evidentiary hearings, like the Rule 11 hearing that has not yet been held in this case. That, in substance, is what the superior court did here in the translation order.[3]

¶29 Second, the silence of the Arizona Rules of Criminal Procedure does not, as Cervantes appears to argue, preempt or preclude

---

[3] For these same reasons, although not raised in the Petition, the court's stated inclination to preclude Dr. Ramirez from testifying if this pre-hearing translation did not occur seems a proper and logical consequence of failing to comply with the translation order.

court rulings that do not precisely fit within the stated text of the Rules. As the State notes, the Arizona Rules of Criminal Procedure do not divest the superior court's "residuum of inherent power, notwithstanding the limitations of [the discovery rule], to order production and inspection when such is 'essential to the due administration of justice.'" *State ex rel. Helm v. Superior Ct.*, 90 Ariz. 133, 137 (1961). Although *Helm* and other similar cases arose in addressing claimed gaps in disclosure obligations imposed in the late 1950s by Arizona Rule of Criminal Procedure 195, nothing indicates that subsequent amendments to the Rules preempt or preclude this residual inherent power. True, in that pre-disclosure world (unlike today), the Arizona Supreme Court refused to "enlarge existing practice and procedure" to favor disclosure to the State based on the court's residual inherent power, expressing concern that "[o]pening pretrial discovery to the State involves many possible pitfalls" and citing concern about infringement on "the defendant's constitutional rights." *Moore v. State*, 105 Ariz. 510, 513 (1970). But today, the State has a right to pretrial discovery and disclosure from a criminal defendant, *see* Ariz. R. Crim. P. 15.2 ("The Defendant's Disclosures"), and Cervantes asserts no constitutional objection to the translation order. Moreover, the concerns *Moore* expressed do not apply to translating, from Spanish to English, documents and other materials already disclosed by a criminal defendant to the State.

¶30 In recently addressing inherent authority under Arizona law, the Arizona Supreme Court stated "[a] trial court has the inherent authority to control the courtroom and trial proceedings." *E.H. v. Slayton*, 249 Ariz. 248, 255 ¶ 25 (2020). That is particularly true where, as here, procedural rules "do[] not address the issue." *State v. Goudeau*, 239 Ariz. 421, 449 ¶ 89 (2016); *accord id.* at 449 ¶92 ("'[t]rial judges have inherent power and discretion to adopt special, individualized procedures designed to promote the ends of justice in each case that comes before them'") (quoting *Hedlund v. Sheldon*, 173 Ariz. 143, 146 (1992)); *Hedlund*, 173 Ariz. at 146 ("As long as such procedures are not inconsistent with applicable constitutional and statutory provisions, as well as our rules of court, '[t]rial judges have inherent power and discretion to adopt special, individualized procedures designed to promote the ends of justice in each case that comes before them.'") (citation omitted); *State ex rel. Corbin v. Superior Ct.*, 103 Ariz. 465, 467 (1968) (recognizing superior court has "the inherent power to order production and inspection broader than" the Arizona Rules of Criminal Procedure) (citing *State ex rel. Polley v. Superior Ct.*, 81 Ariz. 127, 131 (1956)). Moreover, none of these Arizona Supreme Court cases suggest that inherent authority turns on whether a superior court expressly stated it was invoking inherent authority or made findings that would justify its use. For

this additional reason, under Arizona law, the superior court had authority to issue the translation order.[4]

¶31    The Dissent focuses on the text of Rule 11, which the parties agree does not address translation. Implicit in the Dissent is a concern that the parties were not as crisp as they could have been in addressing the issue in superior court, and that the superior court was less than pristine in its analysis. The Dissent also implicitly makes a good case for amending the Rules to expressly address the translation issue one way or another. Acknowledging those concerns, but recognizing this case requires the court to address things as they exist today, Cervantes has not shown the superior court lacked the authority to issue the translation order.

## CONCLUSION

¶32    Accepting special action jurisdiction as directed by the Arizona Supreme Court, for the reasons set forth above, the court denies relief.

**H O W E,** Chief Judge, specially concurring:

¶33    I concur fully with Judge Thumma's opinion that any claim that Cervantes was not required to disclose Dr. Ramirez's records is moot because he has already disclosed the materials to the State. I also fully concur with Judge Thumma's opinion that the superior court properly ordered the disclosed materials translated to English. My concurrence makes Judge Thumma's opinion the Majority opinion in this case.

¶34    I write separately, however, to express dismay that counsel for Cervantes and for the State seek vindication of their legal positions instead of a swift resolution of Cervantes's competence to stand trial. As Judge Thumma notes, Cervantes has been in custody awaiting a determination of his competency for more than year and half, much of that without receiving any mental health services. *Supra* at ¶ 3. And why is Cervantes sitting in custody this long without services? Because counsel would foist the burden of obtaining and paying for a translation of the doctor's notes onto the other party rather than accept that modest burden

---

[4] The Dissent focuses, in significant part, on applicable procedures and rules in federal courts. The issue here, however, is whether the translation order was authorized under Arizona law.

and moving forward to determine the real matter of justice: Cervantes's competence.

¶35        As a matter of ordinary litigation, I do not blame either counsel; they each have a client to represent, and neither wants her client to bear a cost unnecessarily. But as a matter of common sense, disputing who pays for the translation here is meaningless. As Judge Thumma notes, *supra* ¶ 23, the Maricopa County Attorney's Office represents the State, and the Maricopa County Public Defender represents Cervantes. So, regardless who wins this case, Maricopa County (and its taxpayers) foot the bill. This dispute is pointless in substance, boiling down to a fight over nothing more than which of the County's pockets the money for the translation comes from.

¶36        More importantly, whatever the translation costs pales compared to the societal and governmental cost in time, resources, and delayed justice that Cervantes—and the public—bear while this matter is litigated. Each counsel has valid arguments supporting their position. Cervantes's counsel believes Cervantes may be incompetent and does not want to waive what counsel asserts is his right to have the State arrange for and pay for the translation. Plus, counsel is concerned that the translation of what was disclosed more than a year ago in Spanish may reveal incriminating statements that are not currently available to the State. The State's counsel, however, has an order from the superior court requiring Cervantes to provide that translation, and understandably wants the order enforced so that she may cross-examine the doctor when he testifies at the competency hearing.

¶37        But none of these arguments carry much weight compared to the importance of swiftly determining Cervantes's competence. Protecting Cervantes's rights by continuing to litigate the translation issue at the expense of his right to have his competence determined as quickly as possible is to defeat, not protect, his rights. To the extent that the translation reveals information that counsel believes should not be used in the competency proceedings, counsel can object if the State seeks to use such information. And of course the State has the right to have the superior court's order enforced, and it may need the translation to adequately cross-examine the doctor. But the State has the facility to have the materials translated, and then it can move on to its main goal: proving Cervantes's competence, and if he is competent, proving his guilt for the charged offenses.

¶38        No doubt whether a doctor's previously disclosed notes must be translated and who bears the cost of the translation is an important issue

that should be resolved in Arizona courts. But while three levels of Arizona courts have pondered this issue for more than a year—and of course this time will stretch even longer because the parties will surely seek to return to the supreme court once this decision is published—Cervantes sits in custody without treatment. The translation issue should be resolved not in this case, but in one in which the cost in time and resources does not outweigh the cost in delayed justice. Counsel in their zeal to represent their clients' interests should not forget that this litigation affects real lives, not merely who pays for a translation.

**J A C O B S,** Judge, dissenting:

**¶39**　　　This petition for special action raises *two* questions – first, whether "the trial court incorrectly applied Rule 11.4(b)'s disclosure requirements," second, whether "the trial court erroneously ordered the translation of such evidence by the disclosing party." I respectfully dissent because the answer to both questions is yes. The majority errs in skipping over the first question by calling it moot, given that the State has declined to review the materials at issue for far over a year, and even if it had read them, we could order their exclusion. The defendant, the State (which agreed in its response that we should exercise our discretionary special action jurisdiction before the Arizona Supreme Court made that decision for us), the victims, and Rule 11.4 itself all deserve our considered answer to the petition's questions.

**¶40**　　　Two years after requesting it, Adrian Cervantes is still waiting for the prompt pretrial hearing on his competency Arizona Rule of Criminal Procedure ("Rule") 11 promises. Ariz. R. Crim. P. 11.5(a) (requiring hearing within 30 days after appointment of Rule 11.3 competency experts unless court grants "additional time for good cause"); Ariz. R. Crim. P. 11.4(b) (requiring disclosure of non-Rule 11.3 expert reports 15 days before hearing).

**¶41**　　　While Rule 11.4 merely required Cervantes to produce the report of his expert, Dr. Julio Ramirez, 15 days before the competency hearing, Ariz. R. Crim. P. 11.4(b), the superior court required more as a condition to letting Dr. Ramirez testify. *First*, it ordered Cervantes to disclose Dr. Ramirez's recordings of interviews of Cervantes and any other related notes or data. *Second*, it ordered Cervantes to translate Dr. Ramirez's interviews and notes from Spanish to English, even though all Rule 11.4 requires to be produced – the report – was produced in English in

the first place, allowing the cross-examination at the early competency hearing Cervantes still hasn't had.

¶42    Those conditions aren't in Rule 11.4. As such, we should have taken jurisdiction last year when Cervantes petitioned us to reverse these rulings. After we didn't, Cervantes petitioned the Arizona Supreme Court to reverse the superior court's interpretation of Rule 11.4, and that Court directed us to decide his petition. Despite that prologue, today's decision declines to apply Rule 11.4's plain language two years after Cervantes invoked Rule 11's aid. I respectfully dissent, and would vote to vacate the superior court's order and direct a prompt competency hearing at which both sides can cross-examine experts based on their reports as Rule 11's plain language requires. *See* Ariz. R. Crim. P. 11.4(b).

## FACTS AND PROCEDURAL HISTORY

¶43    In 2023, Cervantes was charged criminally in two justice court cases. In April 2024, he was also charged in the superior court. His counsel in the justice court moved for an examination of his competency and to transfer his justice court cases to the superior court for the examination. The superior court granted the motions to examine Cervantes' competency. *See* Ariz. R. Crim. P. 11.2. The superior court found Cervantes incompetent and committed him to the Maricopa County Correctional Health Services Restoration to Competency Program. The superior court consolidated Cervantes' cases for further Rule 11 hearings.

¶44    The court appointed an expert, Dr. Jason Frizzell, who provided a competency report. Cervantes also hired an independent expert, Dr. Julio Ramirez. In August 2024, the superior court ordered the defense to provide to the State "all records, notes, testing materials, raw data and notes pertaining to their evaluation of" Cervantes. Dr. Ramirez interviewed Cervantes in Spanish, because Cervantes does not speak English. Dr. Ramirez reported his findings and process in English, and the defense disclosed his written report to the State in December 2024. The State then requested Dr. Ramirez's notes, raw data, and audio recordings, and requested that they be translated into English.

¶45    In January 2025, Cervantes filed a Motion to Clarify the court's August 2024 order. Cervantes argued the order "exceed[ed] the scope of required disclosures under Rule 11.4([b]), which does not require the disclosure of raw data or audio recordings, but d[id] not provide its legal authority for doing so."

14

**¶46**         Then came the ruling we review today.  The superior court declined to revisit its August 2024 order.  It claimed it had authority to order Cervantes to disclose the raw data and recordings because the expert's raw data "constitutes 'evidence in the case by or on behalf of the mental health expert.' Ariz. R. Crim. [P.] 11.4(b)(2)."  It claimed it had authority to require Cervantes to disclose the audio recordings because they "constitute[] a 'statement in connection with the case.' Ariz. R. Crim. [P.] 11.4(b)(3)."  Accordingly, Cervantes, as ordered, disclosed the raw data and recordings.  The State again requested Cervantes translate the data, but he declined because the August 2024 order did not require him to do so.

**¶47**         The State soon moved to preclude Dr. Ramirez altogether, citing Cervantes' "failure to provide required discovery."  The court said it was "inclin[ed] to grant the State's motion" and ordered Cervantes to translate the raw data and audio recordings and disclose that translation to the State.

**¶48**         Cervantes filed this special action in March 2025, seeking relief from the disclosure and translation orders.  The State conceded jurisdiction was proper since Cervantes had no right of appeal, but this Court declined to take jurisdiction.  Cervantes petitioned the Arizona Supreme Court to review the matter.  That Court granted review, directed that we accept special action jurisdiction, and sent it back to us to decide.

## DISCUSSION

**¶49**         Cervantes argues the court improperly ordered disclosure beyond what Rule 11.4(b) requires "when it ordered the defendant's retained expert . . . to disclose raw data and audio recordings of that expert's interviews with the defendant," and that the court exceeded Rule 11.4's scope by erroneously ordering Cervantes to translate them.  Cervantes is right. *See* Sections I.-II., *infra*, ¶¶ 52-70.  Indeed, all three judges of this panel agree that Rule 11.4 requires neither the disclosure nor the translation, so it's pretty simple: we should reverse and give Cervantes the competency hearing he's been denied for two years.

**¶50**         The majority declines to decide the disclosure issue, claiming it's moot because Cervantes' counsel said he complied with the disclosure order.  Not so.  As U.S. Supreme Court and Arizona law make clear, the disclosure order isn't moot because the State can return the materials, especially given that the State conceded at argument it hasn't reviewed or translated them.  It's also not moot because even if the State reviewed the materials, we can – and should – order the State not to use them.  Finally,

15

even if the issue were moot, which it is not, it fits within an exception to mootness, because reversing the disclosure order would resolve the live dispute the parties have about the validity of the translation order.

**¶51**         Correctly finding no support for the superior court's ruling in Rule 11.4, the majority advances three different arguments for affirmance the superior court didn't rely upon. One is grounded in the rules of evidence, the second in inherent authority, and the third in the Arizona Constitution. But none of those arguments are properly before us, and each argument fails on its merits. *See* Section III., *infra*, ¶¶ 71-95.

**I.** **The Superior Court Erred By Requiring Cervantes to Disclose Dr. Ramirez's Interview Recordings and Notes, So We Should Order These Materials Returned or Destroyed, or Bar Their Use.**

**¶52**         We review the superior court's interpretation of procedural rules *de novo*. *Cranmer v. State*, 204 Ariz. 299, 301 ¶ 8 (App. 2003). When interpreting a procedural rule, we apply statutory construction principles and "effectuate the text if it is clear and unambiguous." *BSI Holdings, LLC v. Ariz. Dep't of Transp.*, 244 Ariz. 17, 19 ¶ 9 (2018); *see also State v. Hansen*, 215 Ariz. 287, 289 ¶ 7 (2007); *Welch v. Cochise Cnty. Bd. of Supervisors*, 251 Ariz. 519, 523 ¶ 11 (2021).

**¶53**         The superior court required Cervantes to disclose Dr. Ramirez's interview recordings because they "constitute[] a 'statement in connection with the case.' Ariz. R. Crim. P. 11.4(b)(3)." It required Cervantes to disclose his notes and any other data because they were "'evidence in the case by or on the behalf of the mental health expert.'" Ariz. R. Crim. P. 11.4(b)(2). This dissent explains why that is not correct.

**A.** **Rule 11.4's Text Does Not Require the Defense to Disclose an Expert's Interview Recordings or Notes.**

**¶54**         Because Rule 11.4(b), titled "Reports of Other Experts," is unambiguous, we interpret it by reading its plain text and without using secondary construction tools. *See Welch*, 251 Ariz. at 523 ¶ 11. Rule 11.4(b) describes the kind of expert subject to the disclosure requirements numbered (1), (2), and (3) in Rule 11.4(b). That kind of expert is "any other mental health expert who has personally examined the defendant or any evidence in connection with the case to determine competence or the defendant's mental status at the time of the offense." Ariz. R. Crim. P. 11.4(b). Dr. Ramirez is such an expert, and so, for him, Cervantes must make the disclosures numbered (1), (2), and (3) in Rule 11.4(b), which are: (1) his "name, address, and qualifications"; (2) "the results of any mental

examinations, scientific tests, experiments, or comparisons conducted on the defendant or on any evidence in the case by or on the behalf of" Dr. Ramirez; and (3) Dr. Ramirez's "written report or statement in connection with the case or . . . a summary of the general subject matter and opinions on which [he] is expected to testify." Ariz. R. Crim. P. 11.4(b)(1)-(3).

**¶55** As the plain text of Rule 11.4(b) makes clear, none of those three disclosures are of all "evidence in the case" reviewed by a mental health expert. Ariz. R. Crim. P. 11.4(b). Giving the rule its plain meaning, we must reverse the superior court's contrary conclusion that Rule 11.4(b) requires disclosure of whatever evidence Dr. Ramirez reviewed. The rule simply does not say that. Indeed, by requiring that any non-appointed mental health expert who has reviewed "any evidence" must disclose the information listed in (1), (2), and (3), *but not "any evidence" they reviewed*, the Arizona Supreme Court impliedly excluded "any evidence" from the list of materials to be disclosed. *See Rash v. Town of Mammoth*, 233 Ariz. 577, 580-81 ¶ 6 (App. 2013) (applying *expressio unius est exclusio alterius* canon to rules of procedure).

### B. Rule 11.4's History Shows It Does Not Require the Defense to Disclose an Expert's Interview Recordings or Notes.

**¶56** Rule 11.4's history underscores that it requires a report or statement of anticipated testimony – not production of the expert's backup, such as notes, interview recordings, or other data.

**¶57** *First*, the version of Rule 11.4 in effect from 1997 until 2017 unmistakably required production of a report and not the backup for the report. It read:

> **b.** **Reports of Other Experts.** At least 15 working days prior to any hearing, the parties shall make available to the opposite party for examination and reproduction the names and addresses of mental health experts who have personally examined a defendant or any evidence in the particular case, together with the results of mental examinations of [sic] scientific tests, experiments or comparisons, including all written reports or statements made by them in connection with the particular case.[5]

---

[5] This sentence was apparently meant to conclude "together with the results of mental examinations or [not "of"] scientific tests, experiments or

Ariz. R. Crim. P. 11.4(b) (Thomson 2017 ed.). This version of the rule called for an expert's identity, the results of tests, experiments, or comparisons they ran, and their report. It didn't call for production of recordings of interviews, or expert notes, as the superior court required here.

¶58          *Second*, the version of Rule 11.4 in effect from 2018 through 2021 was to the same effect. It simply broke out what the defense had to disclose into three expressly numbered parts:

> (**b**)     **Reports of Other Experts.** For any other mental health expert who has personally examined the defendant or any evidence in connection with the case to determine competence or the defendant's mental status at the time of the offense, the defendant and the State must disclose to each other at least 15 business days before any Rule 11.5 hearing:
>
> > (1)     the expert's name and address;
> >
> > (2)     the results of any mental examinations, scientific tests, experiments, or comparisons conducted on the defendant or on any evidence in the case by or on the behalf of the mental health expert; and
> >
> > (3)      any written report or statement in connection with the case.

Ariz. R. Crim. P. 11.4(b) (Thomson 2018 ed.). This version of the rule once again required disclosure of the defense expert's identity, the results of examinations, and any written reports. The rule still didn't call for disclosures of recordings of interviews or the expert's raw data and notes, as the court required here.

---

comparisons, including all written reports or statements made by them in connection with the particular case." *First*, one cannot perform a mental examination of a scientific test. *Second*, when the Arizona Supreme Court revised this rule effective January 1, 2018, it corrected this error, requiring the defense to disclose "the results of any mental examinations, scientific tests, experiments, or comparisons conducted on the defendant," which placed "results of any mental examinations" in parallel with "scientific tests." That functionally turned the mistaken "of" into an "or," so the best way to understand what was meant in the old rule is to treat the "of" as a corrected typographical error.

**¶59**        *Third*, even if this textual history was not clear (and it is), the history of how the current version of Rule 11.4(b) came to be further cements the conclusion that the rule doesn't call for disclosures of recordings of interviews or an expert's raw data and notes.  Indeed, a rule change petition by the Maricopa County Attorney's Office ("MCAO") – the party in this case defending the order requiring disclosure of that information – proves the point.  An on-point Arizona Supreme Court case explains why, to understand Rule 11.4's meaning, we should look at MCAO's successful 2021 petition that persuaded that Court to modify that rule.  *See Chronis v. Steinle*, 220 Ariz. 559, 561 ¶ 11 (2009) (relying on the statements of a rule petitioner to construe the purpose and meaning of Arizona Rule of Criminal Procedure 13.5(c), which it modified in response to that petition).  It's particularly appropriate to do so here for two reasons: the same Arizona Supreme Court that remanded Cervantes' Rule 11.4 petition to us to decide put Rule 11.4 in its current form in 2021 based on MCAO's petition; and MCAO is the litigant defending the superior court's interpretation of Rule 11.4.  *See* MCAO Petition to Amend Arizona Rule of Criminal Procedure Rule 11.4(b) to Facilitate Disclosure of Expert Opinions, R-21-0004 (filed Jan. 5, 2021 and granted Aug. 25, 2021)("MCAO Pet.").

**¶60**        So, to MCAO's petition.  In it, MCAO asked the Arizona Supreme Court to align Rule 11.4(b)(3) with Rule 15 and require an expert testifying in a competency hearing to disclose the general subject matter and opinions on which the expert would testify, if the expert did not prepare a written report.  MCAO correctly argued the amendment would prevent "[s]urprise expert testimony" and "hearing by ambush," which it argued was "contrary to the intent of the rules."  MCAO Pet. at 2.  The Arizona Supreme Court granted MCAO's petition as it was filed, without modification.  Ariz. Sup. Ct. Order R-21-0004 (Aug. 25, 2021).

**¶61**        We should take MCAO's petition at face value.  When it told the Arizona Supreme Court that a testifying expert's written disclosure of what they'd testify to was necessary (and thus, apparently, enough) to avoid "hearing by ambush," it was right.  Surely, with that protection in place, MCAO didn't mean, and the Arizona Supreme Court didn't leave meant but unsaid, that the State *really needs* not only a writing stating the grounds for testimony, *but also* audio recordings of interviews with the subject of the competency hearing *and* all of the testifying expert's notes.  That request is so over the top, and so inconsistent with asking our supreme court in 2021 to merely require some written statement of grounds for testimony, that we should reject any suggestion that it is now the scope of disclosure Rule 11.4 requires.  *See Chronis*, 220 Ariz. at 562 ¶ 15 (allowing that "statements in rule petitions or in comments responding to such

19

petitions are by no means determinative of a rule's purpose and meaning," but nevertheless relying on statements by the rule's proponent to determine the Arizona Supreme Court's own "intent in adopting the rule").

### C. The Correctness of the Order to Disclose Dr. Ramirez's Recordings, Notes, and Raw Data Is Not Moot, and Even If It Were, It Falls Squarely Within an Exception to Mootness.

**¶62** The Opinion avoids deciding whether the order to disclose Dr. Ramirez's recordings is correct by calling it moot. Op. ¶ 17. However, well-settled law shows that's incorrect, especially given the State's concession at oral argument that it has not reviewed any of the disclosed materials in the absence of the translation the State desires. An issue is not moot if there is some available remedy a court may fashion. In *Church of Scientology of California v. United States*, 506 U.S. 9 (1992), the United States Supreme Court held that a dispute over copies of tapes disclosed to the Internal Revenue Service ("IRS") was not moot because, even if a court could not "return the parties to the *status quo ante*," it could still "fashion *some* form of meaningful relief," *id.* at 12, in the form of orders "that the [] copies of the tapes be either returned or destroyed," *id.* at 15, or, if appropriate, that the IRS "refrain from any future use of the information that it has derived from the" material. *Id.* at 13 n.6. "The availability of th[ese] possible remed[ies] is sufficient to prevent this case from being moot." *Id.* at 13.

**¶63** A host of cases relying on *Church of Scientology* make clear that despite the court's order compelling Cervantes to produce the expert materials, there are remedies available to him – return, destruction, or preclusion, to name three – so the issue isn't moot. *See, e.g., Greer v. County of San Diego*, 127 F.4th 1216, 1223 (9th Cir. 2025) ("[W]e can order the district court to direct Intervenors' counsel and Plaintiff's counsel to return or destroy their copies of the [disputed] documents."); *Stanko v. Stirling*, 109 F.4th 681, 698 (4th Cir. 2024) ("It is not the case, as the state suggests, that the disclosure of documents necessarily moots a dispute over whether those documents should be disclosed. . . . [A] court could effectuate at least a 'partial' remedy by ordering documents – or, in that case, tapes – returned or destroyed."); *ADAPT of Phila. v. Phila. Hous. Auth.*, 417 F.3d 390, 393-94 (3d Cir. 2005) ("PHA has indeed complied with the District Court's orders and disclosed the information it now seeks to protect," but "there is a remedy available sufficient to save these appeals from being moot" because "return or destruction of [the disclosed] information would be 'some form of meaningful relief' to PHA, however Pyrrhic." (quoting *Church of Scientology*, 506 U.S. at 12-13)); *In re Sec. Life Ins. Co. of Am.*, 228 F.3d 865, 870

(8th Cir. 2000) ("[O]ur continued jurisdiction does not depend upon being able to provide complete relief; if there is some means by which we can effectuate a partial remedy, this case remains a live controversy" and "it is possible for this appeal to lead to meaningful relief in the form of the return of those documents or copies thereof.").

¶64 Arizona courts recognize a similar principle. We have held that "[a] question is moot when any action the court may take will have no effect on the parties to the action." *Rohan Mgmt., Inc. v. Jantzen*, 246 Ariz. 168, 172 ¶ 9 (App. 2019) (quoting *Lord v. City of Tucson*, 10 Ariz. App. 54, 55 (1969)); *see also Sandblom v. Corbin*, 125 Ariz. 178, 182 (App. 1980) ("[A] case becomes moot when an event occurs, pending an appeal, which renders the relief sought either impossible or without practical effect on the parties to the action."). Because we can order the State to return or destroy the materials, or can order the superior court to preclude them, the issue isn't moot. *See Rohan Mgmt.*, 246 Ariz. at 172 ¶ 9. So we have a duty to decide it.

¶65 Moreover, the majority agrees that the translation order is a live dispute. So even if one views the disclosure order as moot, as the majority does, it falls within an exception to mootness, because the consequences of the order continue to affect Cervantes. *See Cardoso v. Soldo*, 230 Ariz. 614, 617 ¶ 9 (App. 2012) ("Under th[e] [collateral consequences] exception [to mootness], an appellate court will review an otherwise moot order if the consequences of that order will continue to affect a party."). Put another way, because deciding Cervantes' preserved objection to the disclosure order in his favor would resolve the translation question before us, we have a further reason to decide it. We should direct the superior court to employ one of these remedies before the competency hearing.

> **D.** **The State's Own Response Brief, Which Extensively Argues the Disclosure Issue and Waives Mootness, Underscores That the Disclosure Issue Isn't Moot.**

¶66 The State's own brief powerfully demonstrates why the majority's insistence that it must not decide the disclosure issue because it is moot is wrong. Just as Cervantes' first question presented and argued was the disclosure question, the State spent two-and-one-half pages of its seven-page response on the argument that "[t]he trial court did not abuse its discretion by ordering disclosure of Dr. Ramirez' evaluation notes, raw data, and recordings." The parties were in agreement that this was a live issue, fairly presented to this court for decision. The State even conceded

that "special action jurisdiction is appropriate," while asking us to decide this question against Cervantes.

¶67 Moreover, the State didn't raise mootness in its response. Parties can waive mootness. *See In re $15,379 in U.S. Currency*, 241 Ariz. 462, 472 ¶ 32 n.7 (App. 2016) ("Because the state never presented a proper mootness claim in this court, we do not address that issue."). By not raising it, the State did so here. *See id.* The majority errs by relying on the discretionary doctrine of mootness to avoid deciding this issue, particularly in light of the majority's choice to rely on and decide this special action on the basis of arguments no party raised (the rules of evidence, Article 28 of the Arizona Constitution) or which the State waived (inherent authority). The parties' filings leave no question: the disclosure issue is live. We should decide it.

## II. The Superior Court Erred By Requiring Cervantes to Translate the Materials at Issue, Because Rule 11.4(b) Does Not Require a Party to Translate Disclosed Data.

¶68 Again, we review the superior court's interpretation of procedural rules *de novo*. *Cranmer*, 204 Ariz. at 301 ¶ 8. We likewise apply statutory construction principles and "effectuate the text if it is clear and unambiguous." *BSI Holdings*, 244 Ariz. at 19 ¶ 9; *see also Hansen*, 215 Ariz. at 289 ¶ 7.

¶69 The court's initial orders requiring production of the materials at issue didn't order Cervantes to translate any materials before disclosing them to the State. But at a February 2025 status conference, the court stated that while knowing of no Rule 11 authority supporting it, "basic due process does require the defense . . . translate those documents and disclose them to the State." The court explained that this is "not a new issue in Rule 11," that it "has come up before with" Dr. Ramirez, and that "other judicial officers have required the defense to translate and disclose" any materials within the scope of Rule 11.

¶70 The court was right that no authority under Rule 11 supported this translation requirement. Neither does the text of Rule 11.4(b), which does not address translation. We should decline to read additional disclosure obligations into a rule where there is no evidence of an intent to impose such an obligation. *See McMichael-Gombar v. Phx. Civ. Serv. Bd.*, 256 Ariz. 343, 348 ¶ 18 (2023) ("Nothing is to be added to what the text states or reasonably implies. . . . That is, a matter  not covered is to be treated as not covered." (quoting Antonin Scalia & Bryan A.

Garner, *Reading Law: The Interpretation of Legal Texts* 93 (2012))). And while the State is right that Arizona law sometimes requires a producing party to translate disclosures into English, *see, e.g.*, A.R.S. § 25-1343, that cuts against the State's position. If Rule 11 meant to require a producing party to translate materials, it would say so. *See Sw. Iron & Steel Indus., Inc. v. State*, 123 Ariz. 78, 79 (1979); *Rash*, 233 Ariz. at 580-81 ¶ 6; *see also* Scalia & Garner, *supra*, at 93. But it doesn't. Much as the majority says, maybe that's a reason to amend the rule. Op. ¶ 31. But today our job is to follow the rule, not to decide what might be a better rule.

III.  **Neither the Rules of Evidence Nor Inherent Authority Nor Article 28 of the Arizona Constitution Justify the Disclosure or Translation Orders.**

A.  **The Rules of Evidence Cannot Justify the Rule 11.4 Rulings.**

**¶71**  The rules of evidence do not justify the superior court's Rule 11.4 rulings because: (1) any such argument was waived; (2) the party presentation principle bars its consideration here; (3) the evidence rules do not govern disclosure or discovery, as a matter of law; and (4) the majority's suggestion that Cervantes conceded the relevance or application of these rules at oral argument is incorrect.

1.  **The State Repeatedly Waived Any Argument That the Rules of Evidence Somehow Support the Superior Court's Rule 11.4 Rulings.**

**¶72**  The State did not argue in the superior court that the rules of evidence justified the superior court's order that Cervantes disclose and translate Dr. Ramirez's interview recordings or notes. This waives the argument. *BMO Harris Bank N.A. v. Espiau*, 251 Ariz. 588, 593-94 ¶ 25 (App. 2021) ("[L]egal theories must be presented timely to the trial court so that the court may have an opportunity to address all issues on their merits. If the argument is not raised below so as to allow the trial court such an opportunity, it is waived on appeal." (quoting *Cont'l Lighting & Contracting, Inc. v. Premier Grading & Utils., LLC*, 227 Ariz. 382, 386 ¶ 12 (App. 2011))). No party mentioned the rules of evidence in their appellate briefs in this court or the Arizona Supreme Court. That was a second waiver of the argument. *Belen Loan Invs., LLC v. Bradley*, 231 Ariz. 448, 457 ¶ 22 (App. 2012) (holding that issues not clearly raised and argued in a brief are waived).

2.  **Deciding This Appeal in Part Based on the Rules of Evidence Violates the Party Presentation Principle.**

¶73         The Court errs today by deciding this appeal based on arguments the State never made, and which the superior court never articulated. That departure from the appeal the parties framed violates the party presentation principle. *See, e.g., United States v. Sineneng-Smith*, 590 U.S. 371, 375, 380 (2020). As the Supreme Court put it last term: "In our adversarial system of adjudication, we follow the principle of party presentation. The parties frame the issues for decision, while the court serves as [the] neutral arbiter of matters the parties present. To put it plainly, courts call balls and strikes; they don't get a turn at bat." *Clark v. Sweeney*, 607 U.S. 7, 9 (2025) (cleaned up).

¶74         The party presentation principle guides us just as surely in Arizona's state courts. *See Dynometrics Inc. v. Ariz. Dep't of Econ. Sec.*, 257 Ariz. 283, 291-92 ¶¶ 34-35 (App. 2024). By creating a new basis to resolve this case, the majority bypasses the adversarial process, which is not our job. It's especially inapt to do so here, where the State and Cervantes – the parties presenting the issue for our review – have honed their dispute over Rule 11.4 at the cost of Cervantes being confined for over a year, while both parties agree we need to decide the Rule 11.4 issue for this and future cases. *See id.* at 291 ¶ 34 ("The litigants are responsible for developing arguments and adducing evidence on which to stake their positions because *our judicial system is adversarial in nature and thus 'designed around the premise that the parties know what is best for them.'*" (emphasis added) (quoting *S. Point Energy Ctr. LLC v. Ariz. Dep't of Rev.*, 251 Ariz. 263, 268 ¶ 26 (App. 2021))). And while the Arizona Supreme Court did not expressly direct us on remand, it's not as if we have no idea why we have this case on remand. Were the decision at bar beyond any suggestion of error, it would not have come back. Remanding it implies the Arizona Supreme Court observed potential error worthy of appellate review – and all the court had before it were dueling arguments about Rule 11.4. By stepping entirely over the issue the parties framed, and which led to this remand, the court defeats the parties' choice to seek resolution of the dispute they carried from the superior court to the supreme court. Defeating that choice is unjust particularly because of the special concurrence's point that so many human costs are attached to the dispute all parties have maintained for the past two years. Op. ¶ 38 (Howe, C.J., specially concurring). We should choose instead to honor their framing.

### 3.    The Opinion Errs By Relying on the Rules of Evidence to Justify the Court's Disclosure Orders.

¶75　　　　There are several good reasons the superior court and the State didn't justify the Rule 11.4 ruling by citing the evidence rules.

¶76　　　　*First*, as a matter of law, they are not useful in deciding discovery and disclosure questions, because that's not their purpose: "the Rules of Evidence are not rules of discovery." *United States v. Williams*, 792 F. Supp. 1120, 1134 (S.D. Ind. 1992); *see also Morris v. Comm'r of Internal Rev.*, 65 T.C. 324, 326 n.3 (1975) ("[T]he Federal Rules of Evidence govern the proceedings of this Court, not its pretrial discovery procedures."). The Arizona Rules of Evidence, modeled closely on those federal rules, are irrelevant to the question the Arizona Supreme Court required us to answer when it directed us to take jurisdiction over the parties' Rule 11.4-framed dispute over the superior court's Rule 11.4 order.

¶77　　　　*Second*, even if the Arizona Rules of Evidence were relevant here, which they are not, the result the majority reaches is at odds with their purpose. *See* Ariz. R. Evid. 102 ("These rules should be construed so as to administer every proceeding fairly, eliminate unjustifiable expense and delay, and promote the development of evidence law, to the end of ascertaining the truth and securing a just determination.").

¶78　　　　How so? For one thing, by allowing the circumvention of Rule 11.4, today's decision rewards, rather than eliminates, unjustifiable expense and delay. *But see* Ariz. R. Evid. 102. For another, it muddies the development of evidence law by applying rules of evidence *sua sponte* where they are inapposite, inviting their future misuse as quasi-disclosure rules. *Id.* Finally, it creates an unjust determination of this case – as the special concurrence reflects – by compelling free translations of hours of interviews at the cost of what will be more than a two-year delay in a competency hearing that was supposed to be prompt. *Id.*

¶79　　　　*Third*, the majority's position is marred by a deep circularity in its reasoning. It suggests Arizona Rule of Evidence 705 should justify the prior order to disclose backup to Dr. Ramirez's report despite Rule 11.4 not requiring it, to facilitate cross-examination. But cross-examination is necessarily constrained **by what is required to be disclosed**. The Arizona Supreme Court wrote Rule 11.4 as a disclosure rule. We ought to follow it.

**4.　　The Opinion's Suggestion That Cervantes Conceded the Relevance or Application of the Rules of Evidence to This Question Is Incorrect.**

¶80        Though Cervantes' counsel insisted at oral argument that the Arizona Rules of Evidence were irrelevant to the questions the court decides today, the majority implies counsel conceded their application at oral argument.  Not so.  Counsel said they would apply at the competency hearing if guidance became necessary, but correctly maintained that because Rule 11 is clear, they were wholly irrelevant here:

> Counsel:  I do think that *because we're in Rule 11 and* because our position is that *the rule is clear, we don't even get to the rules of evidence*.

> Court: Do the rules of evidence apply in Rule 11 proceedings?

> Counsel: I think that *they apply when we need guidance on what to do in a Rule 11 proceeding*. I think *again when we're in the Rule 11 context, if the rule is clear*, again, in this case, when we're talking about what's required for disclosure before any sort of testimony, *it's not appropriate to consult the Rules of Evidence if Rule 11 is clear*.

(Emphasis added; verbal interruptives removed).

###        B.        Inherent Authority Provides No Support for the Rule 11.4 Order.

####                1.        The State Waived Inherent Authority, the Court Neither Relied Upon Inherent Authority Nor Made Findings That Could Justify Invoking It, and the Majority's Use of it Contradicts Controlling Law.

¶81        The majority invokes the superior court's inherent authority to justify the disclosure and translation orders.  But that court's inherent authority cannot justify those orders, for two independent reasons.

¶82        *First*, the State did not invoke inherent authority below and the superior court resolved this issue by applying Rule 11.4.  So this argument (which is the principal basis of the majority's decision) is waived.  *See Cook v. Ryan*, 249 Ariz. 272, 276 ¶ 11 (App. 2020).

¶83        *Second,* because the superior court did not invoke inherent authority, there are no reviewable findings supporting the exercise of such inherent authority.  That's fatal to the majority's analysis, because we need supportive findings to consider a claim that inherent authority justified a ruling.  *Acker v. CSO Chevira*, 188 Ariz. 252, 255 (App. 1997) ("Because the

trial court neither invoked its inherent authority nor made any findings that would justify its use of that authority, the dismissal cannot be affirmed as an exercise of inherent authority."). Both problems in *Acker* are problems here: the court neither invoked inherent authority, nor made findings to justify invoking it. Our law doesn't allow us to affirm on that record. The majority's response, essentially that the superior court could properly have used its inherent authority here even if it didn't, Op. ¶ 30, talks past the need for reviewable findings. A requirement of reviewable findings is consistent with the reluctance to use inherent authority that must inform its proper exercise. *See In re Gravel*, 6 F.4th 503, 516 (2d Cir. 2021) ("Inherent power is constrained: it requires 'caution' and notice before use; and it is a last resort for when an express authority is not 'up to the task.'" (citing and quoting in part *Chambers v. NASCO*, 501 U.S. 32, 50 (1986))). It's not a Swiss Army knife that, after the fact, provides authority for rulings that lack correct justifications in statutes or rules.

**¶84**        *Third*, as *Chambers* (the defining modern case on inherent authority) makes clear, the majority's approach to inherent authority, if let to stand, puts Arizona's law of inherent authority in conflict with U.S. Supreme Court law. In *Chambers*, the U.S. Supreme Court wrote that inherent authority requires a court to "comply with the mandates of due process," 501 U.S. at 50, which means "notice before use." *In re Gravel*, 6 F.4th at 516. The majority's after-the-fact blessing of the Rule 11.4 rulings as permitted by inherent authority the superior court never invoked can't be squared with Arizona law in *Acker*, or the idea of prior notice that is inherent in due process. *See Chambers*, 501 U.S. at 50. Given that the Arizona Supreme Court has approvingly cited *Chambers*, *see Hancock v. O'Neil*, 253 Ariz. 509, 513 ¶ 14 n.6 (2022), and that Arizona's law of inherent authority tracks federal law, *see* Paragraphs 85-94, *infra*, this court has no power to make contrary new law in this space.

> **2.**        ***Campbell v. Thurman* Bars the Use of Inherent Authority to Evade or Contradict the Command of a Controlling Procedural Rule – Here, Rule 11.4.**

**¶85**        The Arizona Supreme Court's decision in *Campbell v. Thurman*, 96 Ariz. 212, 214 (1964) prevents us from relying on inherent authority to justify the superior court's disclosure and translation orders, given that Rule 11.4 governs those subjects. There, the superior court quashed an indictment of a minor for involuntary manslaughter. *Id.* at 212. But then the court reversed itself and denied the motion to quash the indictment. *Id.* The Rules of Criminal Procedure did not provide for rehearing of an order quashing an indictment, but Rules of Criminal

Procedure 175 and 176 did allow the State to file a new indictment. *Id.* at 213-14.

¶86        The defendant petitioned the Arizona Supreme Court for relief from the indictment the superior court had revived after reconsidering its prior ruling quashing the indictment. *Id.* at 212-13. The supreme court explained that there were two reasons inherent authority could not breathe life into the dismissed indictment. *First*, once the case was dismissed, there was no jurisdiction. *Id.* at 213-14. *Second*, there were procedural rules that governed the situation – in particular, "[t]he State might have filed a new information pursuant to Rules of Criminal Procedure 175 and 176." *Id.* at 214. Given that there was a controlling procedural rule, the State wasn't allowed to invoke inherent authority to justify reviving the dismissed indictment: "Where statutes and rules exist covering the situation it is unnecessary and improper to look to the common law for inherent powers." *Id.* Just so, here. The Arizona Supreme Court's holding in *Campbell* bars any end-run around Rule 11.4 sounding in inherent authority. *See also Elizabeth W. v. Georgini*, 230 Ariz. 527, 529 ¶ 8 (App. 2012) ("The state acknowledges, however, that a trial court's inherent powers end where statutes and rules begin." (citing *Campbell,* 96 Ariz. at 213)). The majority doesn't acknowledge *Campbell*, but it controls here.

¶87        Arizona's treatment of this subject accords with the U.S. Supreme Court's treatment of it. Where a procedural rule is unambiguous and controls a specific area of law, a federal court may not invoke its inherent authority to contradict or circumvent that rule. *See Carlisle v. United States*, 517 U.S. 416, 425-26 (1996) ("Whatever the scope of th[e] 'inherent power,'" to formulate procedural rules not specifically required by the Constitution or Congress, "it does not include the power to develop rules that circumvent or conflict with the Federal Rules of Criminal Procedure."); *id.* at 428 ("The case law of this Court that petitioner relies upon does not establish any 'inherent power' to act in contravention of applicable Rules."); *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254-55 (1988) (holding that a federal court may not invoke inherent authority "to circumvent the harmless-error inquiry" required by Federal Rule of Criminal Procedure 52(a) because "federal courts have no more discretion to disregard the Rule's mandate than they do to disregard constitutional or statutory provisions"); *Societe Internationale Pour Participations Industrielles Et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 207 (1958) ("Reliance upon . . . 'inherent power,' can only obscure analysis of the problem" because "whether a court has power to dismiss a complaint because of noncompliance with a production order depends exclusively upon Rule 37.").

### 3. *Moore v. State* Forecloses the Use of Inherent Authority to Avoid Rule 11.4's Application Here.

**¶88** The majority rests its decision on *State ex rel. Helm v. Superior Court*, 90 Ariz. 133, 137-38 (1961). Op. ¶ 29. There, the Arizona Supreme Court wrote that the superior courts retain a "residuum of inherent power, notwithstanding the limitations of [the discovery rule], to order production and inspection when such is 'essential to the due administration of justice.'" 90 Ariz. at 137 (quoting *State ex rel. Polley v. Superior Ct.*, 81 Ariz. 127, 130 (1956)). The majority contends that "[a]lthough *Helm* and other similar cases arose in addressing claimed gaps in disclosure obligations imposed in the late 1950s in Arizona Rule of Criminal Procedure 195, nothing indicates that subsequent amendments to the Rules preempt or preclude this residual inherent power." Op. ¶ 29. But *Helm* cannot bear the weight the majority would place upon it. The Arizona Supreme Court has since explained very clearly many reasons the superior court doesn't retain an inherent authority to issue decisions that vary and contradict procedural rules.

**¶89** *First*, as already explained, three years later, the Arizona Supreme Court flatly declared that "[w]here statutes and rules exist covering the situation it is unnecessary and improper to look to the common law for inherent powers." *Campbell*, 96 Ariz. at 214. *Campbell* is still good law, and we must follow it. That should end the analysis.

**¶90** *Second,* the Arizona Supreme Court explained in *Moore v. State*, 105 Ariz. 510 (1970) that *Helm*'s claims of a "residuum" of inherent authority were limited to the context of assuring defendants of due process. *Id.* at 512-14. There, despite *Helm*, the court denied the State's request for pretrial discovery of psychiatric reports in the defendant's possession. *Id.* at 514. The Court explained that in *Helm* the superior court relied on its "residuum of inherent power" to assure a defendant of fairness, and reminded the State that "[t]his Court has never, either by rule or by decision, extended discovery and inspection to the prosecution." *Id.* at 512-13.

**¶91** *Third*, just like *Campbell*, *Moore* specifically rejected the idea of enlarging rights to discovery based on inherent authority where there was a controlling procedural rule. As the Arizona Supreme Court wrote, "[t]here may be many good reasons why the State should be provided with limited discovery rights" – the same claim the superior court, the State, and the majority make here. *Id.* at 513. But, our supreme court wrote, rejecting that very claim, "we think it inadvisable to enlarge existing practice and

procedure, which is limited by a specific Rule, by the exercise of inherent power on a case-to-case basis." *Id.* (quoting *State v. Thompson*, 50 Del. 456, 459 (1957)). This language should control here, and remind us all that the Arizona Supreme Court enacted Rule 11.4, which we are all bound to follow, despite wishes that fairness could allow the court to do justice by departing from the rule.

¶92 *Fourth,* the Arizona Supreme Court put a fine point on it, explaining that using inherent authority to selectively enlarge the State's rights where criminal-procedural rules constrain them would nullify the Arizona Rules of Criminal Procedure and make every trial judge a law unto themselves. If inherent authority supplanted the rules, our supreme court pointedly warned, "each and every trial judge would be left to his own devices to determine where fair play in favor of the State ends and infringement on personal rights begins. . . . This completely nullifies the Rules of Criminal Procedure as a consistent system for practice." *Id.* at 513-14 (cleaned up). That's as true now as it was in 1970. A superior court judge's sense of fairness (or the majority's) is not law, while Rule 11.4 is. We are bound to follow it. Recourse to inherent authority when desired, however well-intended, subverts the Rules of Criminal Procedure.

¶93 *Fifth,* the Arizona Supreme Court in *Moore* explained why it's especially inapt to rely on inherent authority to circumvent a clear procedural rule. The reason is that this is a rule-driven area, where the Arizona Supreme Court can (and does) fix problems in criminal procedure *by rule amendments*. So it's not appropriate to reform criminal procedure through decisions that depart from clear rules – instead, parties should petition the court to change the rules. *Id.* at 514 ("It is well to remember that we are dealing with a subject that is peculiarly within the Supreme Court's rule-making and rule-changing power. . . . [T]he Supreme Court has available the traditional method of [inviting debate in the criminal bar and passing changed rules and] . . . such a technique of reform is superior to the case-to-case decisional approach, with its concomitant uncertainty and conflicts, individualizing facts, and inarticulated basic assumptions of policy." (cleaned up)). *Moore* is extraordinarily on point, given that MCAO in 2021 persuaded the Arizona Supreme Court to refine and improve Rule 11.4. Everyone now needs to live with the rule as it was desired and is now written. It is not for the trial court or this Court to rewrite it using the tool – placed beyond our reach in *Campbell* and *Moore* – of inherent authority. That's not our job.

¶94 *Sixth,* the majority's analysis of inherent authority fails in light of these authorities, and on its own terms. The majority tells us in

Paragraph 30, citing two Arizona Supreme Court cases, that inherent authority can justify a superior court ruling "[a]s long as such procedures are not inconsistent with applicable constitutional and statutory provisions, as well as our rules of court."  Op. ¶ 30 (citations omitted).  I agree.  The problem is that the majority is requiring the disclosure in English of something *that's never been disclosed in English*, under a procedural rule that says Cervantes isn't supposed to disclose it.  *See* Ariz. R. Crim. P. 11.4. That contradicts Rule 11.4, so inherent authority doesn't solve the majority's analytic problem.  *See State v. Goudeau*, 239 Ariz. 421, 449 ¶¶ 89, 92 (2016) (citing *Hedlund v. Sheldon*, 173 Ariz. 143, 146 (1992)).  And again, no disclosure order in this case is moot, since we have the power to order disclosed-but-unread things returned, and the power to have disclosed-and-read-but-not-yet-used things barred at the competency hearing.  *See, e.g.*, *Church of Scientology*, 506 U.S. at 12-15.  So declining to order those remedies contradicts Rule 11.4.  And the majority doesn't claim the superior court invoked inherent authority in its January 2025 order at all, even under another name.  *See* Op. ¶ 30.  So the majority steps around and over Rule 11.4 on the theory that the superior court could have issued its orders using its inherent authority, even if it didn't.  That's a stretch too far for our rule-based legal order, under *Campbell* and *Moore*.  Both parties asked us to decide the Rule 11.4 issue.  And even if I turn out to be wrong, I think the Arizona Supreme Court asked us to decide it too, by strong implication – there was nothing else in the petition for review over which it accepted jurisdiction.  It's our job to decide both questions Cervantes presented and never waived – disclosure and translation.

### C.  Article 28 of the Arizona Constitution Neither Directs Nor Justifies the Translation Order.

¶95        The majority seeks to justify the translation order by arguing Article 28 of the Arizona Constitution is a "directive" requiring Cervantes' competency hearing under Rule 11 be conducted in English.  Op. ¶ 27 (citing Ariz. Const. art. 28, §§ 2, 4).  The hearing will be conducted in English, but Article 28 isn't why. While the Arizona Constitution requires "[o]fficial actions" to be conducted in English, Ariz. Const. art. 28, § 4, official actions don't include "[a]ctions that protect the rights of victims of crimes or criminal defendants," Ariz. Const. art. 28, § 1(2)(e), which includes the Rule 11 competency hearing.  Accordingly, the plain text of Article 28 makes clear the majority's reliance on it to justify the translation order is error.

## CONCLUSION

¶96      For these reasons, I respectfully dissent, and would reverse the disclosure and translation orders, while directing a prompt competency hearing.

